178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. See CTA4 Rule 32.1.

United States Court of Appeals, Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sirish Kumar NANDA, Defendant-Appellant.

No. 97-5001.
Argued March 1, 1999.
Decided May 11, 1999.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News, No. CR-97-28; Raymond A. Jackson, District Judge.

Andrew Michael Sacks, Sacks & Sacks, Norfolk, Virginia, for Appellant.

Arenda L. Wright Allen, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

ON BRIEF: Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and HAMILTON and WILLIAMS, Circuit Judges.

OPINION
PER CURIAM.

*1 Sirish Kumar Nanda appeals his conviction and 33-month sentence for knowing receipt of materials depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C.A. §§ 2252(a)(2) (West Supp.1999), 2256 (West Supp.1999), and 2 (West 1969). Nanda contends that the district court erred in denying his motion to suppress statements he made to federal agents and his motion to suppress evidence seized from his computer, in admitting into evidence under Fed. R. 404(b) additional photographs of child pornography and records of computer chat-room dialogues with purported minors found on his computer, and in denying his motion for a mistrial based upon improper comments by the prosecutor during closing argument. With regard to his sentence, Nanda argues that the district court erred in enhancing his offense level for receipt of materials involving prepubescent minors or minors under the age of twelve, in denying him a minimal role adjustment, in enhancing his offense level for obstruction of justice based upon perjury at the suppression hearing, in denying him a downward adjustment for acceptance of responsibility, and in denying him a downward departure for diminished capacity and for voluntary disclosure. Finding no error, we affirm.

I.

On the morning of August 27, 1996, FBI Special Agents Stacey Perkins, James Talley, and John Harley went to the home of Defendant-Appellant Sirish Kumar Nanda to serve him a subpoena for the trial of Craig Zucker and to interview him as a possible witness for that trial. Zucker had just been indicted on eleven counts of distribution of child pornography in Chicago, and Nanda was identified as one of the individuals who had received an e-mail message containing an electronic file with child pornography pictures entitled "hot_yung.zip" from Zucker. Nanda agreed to speak with the agents. Special Agent Perkins served the subpoena on Nanda and subsequently interviewed him. At a pretrial suppression hearing, Perkins testified that she first explained to Nanda the substance of the subpoena, then handed him the group of pictures contained in the hot_yung.zip file and asked him if he recognized any of them. According to Perkins, Nanda replied that he did, and upon Perkins's request, marked the pictures he recognized with an "X." Out of the 33 pictures in the file, Nanda marked 10 of them.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

According to Perkins's testimony, during the course of their conversation Nanda stated that he had an America Online (AOL) account, he paid for it with his Visa card, he learned how to download the child pornography pictures from an ex-girlfriend named Leena, and he had downloaded child pornography a dozen times. Perkins stated that during their conversation, she never indicated that Nanda would not be prosecuted for downloading and receiving child pornography. Following her interview with Nanda, Perkins asked Nanda whether he would consent to allow the FBI agents to take his computer towers (hard drives) back to the office to see if the pictures he had marked with an "X" could be found. Perkins presented Nanda with a search form for the two computer towers and read the form over with him. Nanda signed the form, as well as Special Agent Harley, who witnessed Nanda's signature, and Special Agent Talley. Once Nanda signed the form, the FBI seized the computers. A subsequent analysis of the files on the computer by FBI Computer Specialist Terry Swindell revealed that five of the photos that Nanda had identified were on the computer towers. Perkins also testified at the suppression hearing that Swindell found 700 other child pornography images and records of four sexually oriented chat-room dialogues with individuals who represented themselves as minors on Nanda's hard drive.

**\*2** On cross-examination, Perkins stated that at the time she served the trial subpoena on Nanda he was not a subject of investigation, she told him that it was against the law to download child pornography, and she never promised him immunity from prosecution. Perkins also stated that she concluded that Nanda should be a subject of criminal investigation and prosecution after learning of the hundreds of child pornography pictures on his computer a few weeks after her interview with Nanda. According to Perkins, at no time was Nanda restrained or told he could not leave his house.

Nanda presented a markedly different account of the agents' visit at the suppression hearing. Nanda testified that Perkins assured him from the beginning that he was not in trouble and reassured him to that effect throughout their conversation. Nanda stated that he told Perkins that he would be very happy to help her in any way that he could. When the conversation turned toward his computer, Nanda asked whether the agents had a search warrant; in response, one of the male agents told him in a threatening manner that if they had to get a search warrant, they would return with twenty officers in uniform and cars with flashing lights and would search his entire house. At one point, Nanda received a call from his secretary telling him that he was late for a meeting. According to Nanda's testimony, he asked the agents whether they could complete the search in the afternoon, and Agent Perkins replied that they had to do the search right now. Nanda agreed to let the agents look at his computer. Following a brief look at his computer by the agents, Agent Perkins told Nanda that they were taking his computer for further analysis and gave him a consent form to sign. According to Nanda, one of the male agents told him that they would take his computer whether or not he signed the consent form. Nanda acknowledged signing the consent form, but said that he felt he had no choice but to give up his computer.

On cross-examination, Nanda disputed Perkins's account of their conversation regarding child pornography. Nanda denied that his ex-girlfriend had shown him how to download child pornography and denied telling Perkins that he had downloaded child pornography approximately twelve times. Nanda also stated that he did not mark any of the photographs Perkins had shown him. Nanda again acknowledged signing the consent form, which indicated that he had a right to refuse to consent, but claimed that he did not read it prior to signing it.

After being indicted for knowing receipt of the hot_yung.zip file, which contained five photographs of minors involved in sexually explicit conduct, Nanda moved to suppress, as coerced, statements he made to the FBI agents and all evidence

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

seized from his computer. Nanda also moved to exclude noncharged material found on the computer from being presented at trial. At the suppression hearing, the district court received testimony from Perkins and Nanda, as recited above, before continuing the matter until later. The Government then filed a notice of intent to introduce as Rule 404(b) evidence, in addition to the hundreds of images of children engaged in sexually explicit conduct found on Nanda's computer, records of four sexually oriented chat-room dialogues with purported minors found on the computer.

**\*3** When the district court resumed consideration of Nanda's motions, it received testimony from Special Agents Talley and Harley that corroborated Special Agent Perkins's account of events and testimony from Nanda's ex-fiancee that corroborated Nanda's account of events. Based upon the testimony of these five witnesses, the district court concluded that Nanda voluntarily consented to his conversations with the FBI agents, voluntarily agreed to have the agents look at his computer, and voluntarily consented to the execution of the search form. The district court therefore denied Nanda's motion to suppress his statements to the FBI agents and his motion to suppress the evidence gathered from his computer based upon improper force or involuntariness. The district court also permitted the Government to introduce the records of four sexually oriented chat-room dialogues with purported minors and twelve additional child pornography photographs, all found on Nanda's computer, pursuant to Rule 404(b) of the Federal Rules of Evidence. Based upon the totality of the evidence introduced by the Government, the jury convicted Nanda of Count One of the indictment: knowing receipt of materials depicting minors involved in sexually explicit conduct in violation of 18 U.S.C.A. §§ 2252(a)(2) (West Supp.1999), 2256 (West Supp.1999), and 2 (West 1969).FN1

> FN1. Count Two of the indictment charged that upon conviction for violating 18 U.S.C.A. § 2252 (West Supp.1999), Nanda shall forfeit to the United States, *inter alia,* any and all property used or intended to be used in the commission of the violation, including but not limited to his computer. Because Nanda voluntarily consented to the forfeiture of the computer following the jury's guilty verdict, the jury did not deliberate on this count.

At sentencing, Nanda's base offense level was set at fifteen pursuant to the child pornography guideline. *See U.S. Sentencing Guidelines Manual* § 2G2.2 (Nov.1993).FN2 Because Nanda possessed sexually explicit material involving prepubescent minors or minors under the age of twelve, Nanda's base offense level was increased an additional two levels. *See* U.S.S.G. § 2G2.2(b)(1). The district court denied Nanda's request for a four-level reduction for minimal role. *See* U.S.S.G. § 3B1.2(a). The district court assessed a two-level enhancement for obstruction of justice based upon perjury at the suppression hearing. *See* U.S.S.G. § 3C1.1. The district court denied Nanda's request for a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Finally, the district court denied Nanda's request for a downward departure for diminished capacity, *see* U.S.S.G. § 5K2.13, and for voluntary disclosure, *see* U.S.S.G. § 5K2.16. With an adjusted offense level of 19 and a criminal history category of I, Nanda's guideline range was 30-37 months. *See* U.S.S.G. Ch. 5, Pt. A. The district court sentenced Nanda to 33 months imprisonment and three months supervised release. On December 15, 1997, Nanda filed a timely notice of appeal.

> FN2. Although Nanda was sentenced in 1997, the 1993 version of the Guidelines Manual was used pursuant to U.S.S.G. § 1B1.11(b)(1).

Nanda advances several arguments on appeal. First, he argues that the district court erred in denying his motion to suppress statements he made to federal agents in the course of their interview and his motion to suppress evidence found during a search of his computer on the ground that he was

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 4:14-cr-00074-Y   Document 53-1   Filed 08/29/14   Page 4 of 11   PageID 149    Page 4

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

promised that he would not suffer any adverse consequences by cooperating, thus rendering his consent involuntary. Next, Nanda argues that the district court erred in admitting twelve additional images of child pornography and four sexually oriented chat-room dialogues with purported minors found on his computer as evidence of other crimes, wrongs, or acts under Fed. R. Evid. 404(b), because this evidence was neither relevant nor reliable. Next, Nanda argues that the district court erred in refusing to declare a mistrial after the prosecutor made statements at closing argument that improperly made reference to Nanda's failure to testify, that misstated the nature and character of the offense for which Nanda was charged, and that improperly appealed to the jury's emotions and passions.

**\*4** With regard to his sentence, Nanda argues that the district court erred in enhancing his offense level by two levels for receipt of materials involving prepubescent minors or minors under the age of twelve because the Government failed to show that he intended to receive such photographs and that any of the minors in question were actually under twelve. Next, Nanda argues that the district court erred in not granting him a four-level minimal role adjustment because he did not forward the hot_yung.zip file to anyone, yet he received a harsher sentence than the more culpable individuals in the child pornography distribution scheme. Next, Nanda argues that the district court erred in enhancing his offense level by two levels for obstruction of justice based upon perjury at the suppression hearing because his false denials were not material to the subject matter of the hearing, which was whether he was subject to coercion or duress by the agents. Next, Nanda argues that the district court erred in denying him a two-level downward adjustment for acceptance of responsibility because he demonstrated acceptance of responsibility by his failure to proffer any testimony at trial regarding the demonstration of guilt, by statements of contrition in the presentence report, and by the uncontradicted sentencing testimony of three mental health professionals who had evaluated Nanda and concluded that he had accepted responsibility for his actions and was compliant with treatment efforts. Finally, Nanda argues that the district court erred in rejecting his request for a downward departure for diminished capacity and for voluntary disclosure because the aforementioned testimony from the three mental health professionals amply support his claim for diminished capacity and because he voluntarily disclosed incriminating information regarding the commission of the instant offense. We address each of these arguments in turn.

II.

Nanda's first contention on appeal is that the district court erred in denying his motion to suppress statements he made to the federal agents in the course of their interview and his motion to suppress evidence seized from his computer during their search. In particular, Nanda argues that statements made by Perkins during the interview impliedly promised him that he would not suffer any adverse consequences by cooperating, thus rendering both his statements to the agents and his consent to the search involuntary. Nanda's argument raises two distinct issues that we address in turn.

A.

First, Nanda argues that his statements to the FBI agents were involuntary and, therefore, inadmissible. This Court "must make an independent determination on the issue of voluntariness, while accepting the district court's findings of fact on the circumstances surrounding the [statements] unless clearly erroneous." *United States v. Braxton,* 112 F.3d 777, 781 (4th Cir.1997) (en banc) (internal quotation marks omitted). Deference to the district court's factual findings are particularly warranted where the district court bases its findings on the credibility of the witnesses. *See United States v. Locklear,* 829 F.2d 1314, 1317 (4th Cir.1987) (per curiam).

**\*5** Whether a defendant's statements are inadmissible because of implied promises made by a government agent is a matter governed by the Fifth

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 4:14-cr-00074-Y   Document 53-1   Filed 08/29/14   Page 5 of 11   PageID 150   Page 5

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

Amendment. *See Braxton,* 112 F.3d at 780. A statement is coerced if it was extracted by implied promises "however slight." *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). "The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *Braxton,* 112 F.3d at 780 (internal quotation marks omitted). After hearing the testimony of Nanda and the FBI agents, the district court determined that the agents did not impliedly promise Nanda any immunity or leniency. Based on these factual findings, which are not clearly erroneous, we conclude that Nanda's statements to the agents were voluntary, and therefore admissible, under the Fifth Amendment. The district court did not err in denying Nanda's motion to suppress statements he made to the agents.

B.

Next, Nanda argues that his consent to the search of his computer was involuntary. Whether a defendant has freely and voluntarily consented to a search is a factual determination by the district court that this Court will reverse on appeal only if it is clearly erroneous. *See United States v. Lattimore,* 87 F.3d 647, 650 (4th Cir.1996) (en banc). "[W]hen the lower court bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses." *Id.* at 650-51 (internal quotation marks omitted) (alteration in original).

Voluntary consent to a search is an exception to the Fourth Amendment requirement of a search warrant. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine whether a consent to search is voluntary, we examine the totality of the circumstances surrounding the consent. *See Lattimore,* 87 F.3d at 650. Factors that are appropriate for the district court to consider include the characteristics of the accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration of the encounter). *See id.* Whether the accused knew he possessed a right to refuse to consent is a relevant factor, but the government need not demonstrate that the defendant knew of his right to refuse consent to prove that consent was voluntary. *See id.*

After hearing the testimony of Nanda and the FBI agents, the district court concluded that the agents did not coerce Nanda into consenting to a search of his computer. The court found that Nanda was an educated individual who possessed a Ph.D. in nuclear physics and understood the purpose for which the agents were at his home. The court also found that Nanda's purported fear of the agents was not credible because it was belied by his eagerness to cooperate and his volunteering of information to the agents that they did not have. The court further noted that the interview took place at approximately 8:30 in the morning in Nanda's house and that Nanda was not a target of the agents' investigation at the time. In sum, the district court rejected Nanda's portrayal of his encounter with the agents as an "adversarial, aggressive, combative atmosphere" in concluding that he freely consented to the search. Based upon the deference this Court pays to credibility determinations by the district court, *see Lattimore,* 87 F.3d at 650-51, we cannot conclude that the district court's conclusion that Nanda's consent to search was voluntary and its subsequent denial of Nanda's motion to suppress the evidence found on his computer was clearly erroneous.

III.

**\*6** Next, Nanda argues that the district court erred in admitting the Government's evidence of twelve additional images of child pornography and records of four sexually oriented chat-room dialogues with purported minors, all found on Nanda's computer, as evidence of other crimes, wrongs, or acts. *See* Fed.R.Evid. 404(b). In particular, Nanda argues that the photographs and chat-room talks were not admissible because they were not reliable,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 4:14-cr-00074-Y   Document 53-1   Filed 08/29/14   Page 6 of 11   PageID 151

Page 6

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

and due to the inability of the Government to pinpoint the dates of the photographs and the talks, they were not relevant. This Court reviews a district court's determination of the admissibility of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. *See United States v. Queen,* 132 F.3d 991, 995 (4th Cir.1997), *cert. denied,* 118 S.Ct. 1572 (1998). A district court will not be found to have abused its discretion unless its decision to admit evidence under Rule 404(b) was "arbitrary or irrational." *United States v. Haney,* 914 F.2d 602, 607 (4th Cir.1990).

Rule 404(b) permits evidence of other crimes, wrongs, or acts to be introduced to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Fed.R.Evid. 404(b). This Court has treated 404(b) as an inclusionary rule, excluding only evidence that has no purpose other than to prove criminal disposition. *See United States v. Sanchez,* 118 F.3d 192, 195 (4th Cir.1997). "[E]vidence is admissible under 404(b) if it is (1) relevant to an issue other than character, (2) necessary, and (3) reliable." *Id.* (internal quotation marks omitted). Moreover, under Fed.R.Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See United States v. Bailey,* 990 F.2d 119, 122 (4th Cir.1993).

Nanda's primary defense during trial was that the Government could not prove that he knowingly received the hot_yung.zip file. The additional photographs and chat-room dialogues were relevant and necessary because they tended to show Nanda's intent, knowledge, and absence of mistake with regard to the hot_ yung.zip file. *See United States v. Dornhofer,* 859 F.2d 1195, 1199 (4th Cir.1988) (holding that evidence of additional child pornography could be used to show the defendant's intent and absence of mistake). This evidence was reliable because it was found on the hard drive of Nanda's computer, where the five photographs named in Count One of the indictment also were found. Moreover, the relevance of the 404(b) evidence was not substantially outweighed by the danger of unfair prejudice under Fed.R.Evid. 403, particularly considering that the district court limited the Government to twelve images out of the 700 that were found on Nanda's computer and instructed the jury that the 404(b) evidence could not be considered in determining whether Nanda actually performed the acts charged in the indictment: knowing and unlawful receipt of the hot_yung.zip file and the photographs contained therein. The district court, therefore, did not abuse its discretion in admitting into evidence the additional photographs and chat-room dialogues.

IV.

**\*7** Nanda also challenges his conviction on the ground that the prosecution made prejudicial comments during closing argument. During the Government's rebuttal following Nanda's closing argument, the third-year law student assisting the U.S. Attorney made the following statements:

What the defense attorney would like you to believe is a lot of smoke because you notice he never put on any evidence, nor did he ever really show or rebut anything that was put on.

(J.A. at 557.)
I think the defense attorney said you can only imagine what a conviction can do to a nuclear physicists[sic], and that's true, but I think you can imagine what exploitation can do to a child, a child that has pictures taken of that child and then spread all over the Internet.

(J.A. at 560.)
Defense counsel started his opening argument out and said this is pretty serious indeed. I hope you would, as you go back and deliberate, realize this is serious business. The trading of these kind of images objectifies our children, whether they be your family or whether they be society.

(J.A. at 563.) Following each of these statements, the district court sustained an objection from Nanda's counsel. Following the Government's re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

buttal, the district court immediately issued a curative instruction that stated that the defendant was not obligated to call witnesses or to put on any evidence, and that the jury could not consider or draw an inference from the defendant's failure to testify or to present evidence. The court also instructed the jury to confine its concern to the charge for which the defendant was on trial. The court then denied Nanda's motion for a mistrial based upon these improper comments.

Nanda argues that the district court erred in not granting his motion for a mistrial. In particular, Nanda argues that the first objectionable statement improperly made reference to Nanda's failure to testify via his reference to his failure to present any evidence to rebut the government's case. Nanda also asserts that the second and third objectionable statements misstated the nature and character of the offense for which Nanda was indicted and made improper appeals to the jury's emotions and passions.

The "grant or denial of a motion for mistrial is within the sound discretion of the trial court, and will not be overturned absent a clear abuse of that discretion." *United States v. Dorsey,* 45 F.3d 809, 817 (4th Cir.1995). In order for a defendant to show that the trial court abused its discretion, the defendant must show prejudice; "no prejudice exists, however, if the jury could make individual guilt determinations by following the court's cautionary instructions." *Id.* (internal quotation marks omitted).

First, Nanda argues that a mistrial was warranted because the associate prosecutor improperly made reference to Nanda's failure to testify via his reference to Nanda's failure to present any evidence to rebut the government's case. In *United States v. Whitehead,* 618 F.2d 523 (4th Cir.1980), this Court held that "[t]he test for determining whether an indirect remark constitutes improper comment on a defendant's failure to testify is: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to *be a comment* on the failure of the accused to testify." *Id.* at 527 (internal quotation marks omitted). In applying this standard, this Court has concluded that a statement by the Government during closing argument that its evidence was "uncontradicted" did not improperly comment on the accused's failure to testify where the defense rested without calling any witnesses of its own. *See United States v. Francis,* 82 F.3d 77, 79 (4th Cir.1996). Because the associate prosecutor's statement regarding Nanda's failure to put on evidence is almost identical to the objected-to statement in *Francis,* the district court did not abuse its discretion in denying Nanda's motion for a mistrial based upon this statement.[FN3]

> [FN3]. Even if the associate prosecutor's statement regarding Nanda's failure to put on evidence improperly commented on Nanda's failure to testify, the district court's immediate curative instruction to the jury to ignore Nanda's failure to testify and its closing charge to the same effect cured any improper impression and was sufficient to avoid declaring a mistrial. *See United States v. Lorick,* 753 F.2d 1295, 1298 (4th Cir.1985).

**\*8** With regard to the second and third objectionable statements, Nanda argues that a mistrial was warranted because the associate prosecutor misstated the nature and character of the offense for which Nanda was indicted and made improper appeals to the jury's emotions and passions. To establish prosecutorial misconduct, a defendant "must show that the remarks were improper and that they prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." *United States v. Adam,* 70 F.3d 776, 780 (4th Cir.1995) (internal quotation marks omitted). Any harm from the associate prosecutor's remark regarding the nature of the charge against Nanda was cured by the district court's immediate cautionary instruction that the jury should confine its concern to the charge for which Nanda was on trial. Moreover, although the associate prosecutor's remark regarding

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

child pornography generally was improper, it did not prejudicially affect Nanda's substantial rights so as to deprive him of a fair trial because the remark was isolated and not intentionally placed before the jury to divert attention to extraneous matters, and there was substantial evidence of Nanda's guilt in the absence of the remarks. *See United States v. Curry,* 993 F.2d 43, 46 (4th Cir.1993). The district court, therefore, did not abuse its discretion in denying Nanda's motion for a mistrial on the basis of these two statements.

V.

Nanda also raises numerous objections on appeal with regard to his sentence. Specifically, Nanda contends that the district court erred: (1) in enhancing his offense level by two levels for receipt of materials involving minors who are prepubescent or under the age of twelve, (2) in not granting him a four-level downward adjustment for having a minimal role in the offense, (3) in imposing a two-level increase in offense level for obstruction of justice based upon perjury at the suppression hearing, (4) in refusing to grant him a two-level downward adjustment for acceptance of responsibility, and (5) in not granting him a downward departure for diminished capacity and for voluntary disclosure.

To give due deference to a district court's application of the Sentencing Guidelines, we review factual determinations for clear error and legal questions de novo. *See United States v. Blake,* 81 F.3d 498, 503 (4th Cir.1996). Moreover, this Court lacks authority to review a decision of a district court not to depart from the applicable guideline range unless the district court's decision is based upon the belief that it lacks the legal authority to depart. *See United States v. Brock,* 108 F.3d 31, 33 (4th Cir.1997). In such a case, this Court may review the district court's decision for abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996). With these principles in mind, we address Nanda's sentencing claims seriatim.

A.

**\*9** First, Nanda argues that the district court erred in enhancing his offense level by two levels for receipt of material involving prepubescent minors or minors under twelve years old. *See* U.S.S.G. § 2G2.2(b)(1). In particular, Nanda argues that the government failed to show that he intended to receive such photographs and that any of the minors in question were actually under twelve.

In making the enhancement determination, the district court looked at record testimony regarding the uncharged material found on Nanda's hard drive pursuant to U.S.S.G. § 1B1.3. The district court concluded that a two-level enhancement was warranted because several of the photographs were images of prepubescent minors or minors under the age of twelve. In doing so, the district court treated Nanda's offense as one of aggregate harm under U.S.S.G. § 3D1.2(d). *See* U.S.S.G. § 1B1.3(a)(2). As further circumstantial evidence in support of the two-level enhancement, the district court credited the testimony of Agent Perkins that many of the files were found in subdirectories with abbreviated names referring to minors.

Nanda's offense was not one of aggregate harm, however, because under U.S.S.G. § 2G2.2, the offense level is not determined on the basis of quantity or other measure of aggregate harm. For offenses in which the offense level is not determined by aggregate harm, the Sentencing Guidelines provide that relevant conduct includes "all acts and omissions ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). Nanda's additional photographs did not occur during his receipt of the hot_yung.zip file, in preparation for receipt of the hot_yung.zip file, or in the course of attempting to avoid detection or responsibility for receipt of the hot_yung.zip file. The district court clearly erred in treating the additional 700 photographs as relevant conduct under § 1B1.3 and as a ground for enhancement under

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

§ 2G2.2(b)(1).

As additional support for the two-level enhancement, the district court relied on the descriptive names of the subdirectories in which the photographs were stored. In *United States v. Kimbrough,* 69 F.3d 723 (5th Cir.1995), the Fifth Circuit upheld a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(1) where the district court based its enhancement on two files found on the defendant's computer described as "Eight Years Indian Girl" and "Preteen School Girl." *Id.* at 733-34. In this case, the district court heard testimony at sentencing from Agent Perkins that of the five photos in the hot_yung.zip file found on Nanda's hard drive, three were found in the subdirectory LGS, one was found in the subdirectory JMIS, and one was found in the subdirectory PT. Perkins testified that based upon her experience in other child pornography cases and training in the area, LGS stood for "little girls," JMIS stood for "junior miss," and PT stood for "preteen." Based upon the persuasive reasoning of *Kimbrough,* Perkins's testimony, and Nanda's own admission that he was curious about this type of material, we conclude that there was sufficient evidence establishing that the photos in the hot_yung.zip file were of prepubescent minors or minors under the age of twelve and that Nanda intended to receive such photos. It was therefore not clear error for the district court to assess a two-level enhancement for receipt of images showing prepubescent minors or minors under the age of twelve.

B.

**\*10** Next, Nanda argues that the district court erred in not reducing his offense level for having a minimal role in the offense. *See* U.S.S.G. § 3B1.2(a). In particular, Nanda argues that he should have received a minimal role reduction because he did not forward the hot_yung.zip file to anyone else, yet he received a harsher sentence than the more culpable individuals in the child pornography distribution scheme, including Craig Zucker.

A downward adjustment pursuant to U.S.S.G. § 3B1.2 is intended for a defendant "who plays a minimal role in concerted activity ... [and is] plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n.1). Furthermore, "[i]t is intended that the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. § 3B1.2, comment. (n.2). That Nanda did not forward the file in question is of no import. Nanda was charged with the receipt, not the distribution, of child pornography. In light of the testimony presented at trial regarding the affirmative steps that one must go through to receive and download a zip file, Nanda clearly did not play a minimal role in the offense for which he was convicted: knowing and unlawful receipt of the hot_yung.zip file.[FN4]

> FN4. For the same reasons discussed *ante* in Section V.A, we are inclined to conclude that the additional 700 photographs and four chat-room dialogues cannot be considered in determining whether Nanda had a minimal role in the offense. This belief does not change our ultimate conclusion on this issue, however.

Further, the disposition of Zucker's case is wholly irrelevant to the determination of whether Nanda had a minimal role in the offense of conviction because Zucker was charged with a different offense, *distribution* of child pornography. Moreover, Zucker's sentence was not an appropriate factor for the district court to consider in sentencing Nanda. *Cf.* *United States v. Fonville,* 5 F.3d 781, 783-84 (4th Cir.1993) (holding that a downward departure is not warranted to correct sentencing disparities between co-defendants or co-conspirators). The district court, therefore, did not clearly err in refusing to grant Nanda's request for a downward adjustment for minimal role in the offense.

C.

Next, Nanda argues that the district court erred in imposing a two-level adjustment for obstruction of justice based upon Nanda's perjury at the suppression hearing. *See* U.S.S.G. § 3C1.1 & comment. (n.4). In particular, Nanda argues that his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

false denials at the suppression hearing were not material to the subject matter of the hearing-whether he was subject to coercion or duress by the agents.

Before holding that a defendant has obstructed justice by committing perjury, the district court must make an independent finding that the defendant has "give[n] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). A matter is material if testimony concerning it would "tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.5). The district court found that Nanda had falsely testified as to the alleged promises made by Perkins and the coercion he was subject to by the agents and had falsely stated that he had not marked several photographs in the hot_yung.zip file. Additionally, the district court determined that Nanda's statements that he did not tell Perkins that he had downloaded child pornography and that Perkins did not go over the consent form with him were untruthful. As the district court determined, these false statements were clearly material to the subject matter of the suppression hearing-whether Nanda had freely made incriminating statements during the interview and had voluntarily consented to a search of his computer. The district court, therefore, did not err in finding that Nanda had committed perjury, warranting a two-level enhancement for obstruction of justice.

D.

**\*11** Next, Nanda argues that the district court erred in refusing to grant him a two-level downward adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). In particular, Nanda argues that he has demonstrated an acceptance of responsibility by his failure to proffer any testimony at trial regarding the determination of guilt, his statements of contrition in the presentence report, and the uncontradicted sentencing testimony of three mental health professions who had evaluated Nanda and concluded that Nanda had accepted responsibility for his actions and was compliant with treatment efforts.

"In order to receive a downward departure, the defendant must first accept responsibility for *all* of his criminal conduct." *United States v. Strandquist,* 993 F.2d 395, 401 (4th Cir.1993) (emphasis added) (internal quotation marks omitted). Moreover, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstruct[ion] ... of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment (n.4). Because Nanda's case is not an extraordinary one in which both the adjustments for obstruction of justice and for acceptance of responsibility might apply, his arguments are essentially foreclosed by the district court's assessment of a two-level enhancement for obstruction of justice. Moreover, the Sentencing Guidelines specifically state that the adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). Nanda's claims of acceptance of responsibility fall into this category. The district court's rejection of Nanda's request for a downward adjustment for acceptance of responsibility was therefore not clearly erroneous.

E.

Finally, Nanda argues that the district court erred in rejecting his request for a downward departure for diminished capacity, *see* U.S.S.G. § 5K2.13, and for voluntary disclosure, *see* U.S.S.G. § 5K2.16. In particular, Nanda argues that the uncontradicted sentencing testimony from the three highly qualified mental health professionals amply support and warrant a downward departure for diminished mental capacity. He also argues that because he voluntarily disclosed incriminating information regarding the commission of the instant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

offense, he is entitled to a downward departure for voluntary disclosure. Because the district court believed that it could not depart on the grounds urged by Nanda, this Court may review the district court's decision for abuse of discretion. *See Koon,* 116 S.Ct. at 2046.

With regard to the downward departure for diminished capacity pursuant to § 5K2.13, this Court has held that in order to qualify for such a departure, "a defendant must be suffering from something greater than emotional problems or hardship." *United States v. Withers,* 100 F.3d 1142, 1147-48 (4th Cir.1996) (internal citations and quotation marks omitted). The defendant "must show an inability to process information or to reason." *Id. at 1148* (internal quotation marks omitted). Moreover, the defendant must demonstrate that his significantly reduced mental capacity bore a causal relationship to the crime. *See id.* In this case, the district court found that the defendant was clearly able to process information and to reason, given his superb on-the-job performance. Moreover, it is undisputed that the events that allegedly triggered Nanda's depression and anxiety, the deaths of his brother and his father, occurred two years after his receipt of the hot_yung.zip file. The district court, therefore, did not abuse its discretion in refusing to grant a downward departure on the basis of diminished capacity.

**\*12** With regard to the downward departure for voluntary disclosure pursuant to § 5K2.16, the district court found that Nanda did not voluntarily disclose any information to the agents; he merely corroborated their existing knowledge. Although Nanda provided the agents with his computer, they were already aware that he was in possession of the hot_yung.zip file and the photographs contained therein. We find no error in this determination. The district court, therefore, did not abuse its discretion in refusing to grant a downward departure on the basis of voluntary disclosure.

### VI.

For the reasons discussed, we find no error by the district court at the trial or sentencing phases of the criminal proceeding against Nanda. We therefore affirm Nanda's conviction and sentence.

*AFFIRMED*

C.A.4 (Va.),1999.
U.S. v. Nanda
178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.